May it please the Court, I'm Thomas Hester on behalf of Appellant Murr Dykes. The main question that this case presents the Court is did the testimony about a rumor that Mr. Dykes had engaged in sexual activity or sexual things with Matt McCabe and Sean Cranston have a substantial and injurious influence on the jury's deliberations? Do we have a also would you address or answer maybe just a predicate question for me? In the original pro se petition, he had a claim for, correct? He had a claim for one of his four claims, the prejudicing evidence that the counsel failed to object to? Yes. Okay. Now, does the new claim that you're trying to assert have any relationship to that claim for at all? I take your question to be wanting me to address the relation back. Yes. I'd just like to know whether there's any, if you're, because my understanding is you're not trying to link the present claim to the old claim for. That's, I think, largely true, yes. Okay. And if I can just maybe make a few points about the substantive point, because I think that's important when we do get to addressing the relation back of the amendment as well. I stated the Brecht v. Abelson standard for harmless error or constitutional harmless error. In this case, looking to what the jury had to decide, in order to convict Mr. Dykes, the jury had to credit the testimony of the accusers. There was no physical evidence. Let me ask you a couple of specific questions I have about it. On the rumor, I am persuaded by your argument myself. We don't confer before arguments, so I speak only for myself. I'm persuaded by your argument that the judge should have sustained the objection to the testimony about rumors that had been heard. It seemed extraordinary to me to let rumor in. My interest is whether it so pervaded the trial as to deny due process of law. And there, I just don't know. Tell me in the strongest material you have why it pervaded the trial. Let me try to give you the material first and then follow up on how I think we sort of parse the McGuire v. Estelle standard. I don't know what you mean by the material first, but this is your chance to address what's on my mind. Okay. Looking to the point of the jury's deliberations, they had to credit the three accusers in order to convict. There was no physical evidence, no admissions. There was no corroboration by other boys who were supposedly there in this very small room at the same time that these acts, which included anal sodomy, allegedly occurred. Isn't it true that the defense elicited this testimony? It was not the prosecutor. No, that is not true. And virtually all of the testimony is set forth in the State's red brief. It's also set forth at 812 to 814 of the record. It's only two pages that are the prosecutor's questioning. The prosecutor first asks the witness, did you hear about a rumor from Bobby Brew, particularly a rumor that involved only Matt and Mr. Dykes? The witness says no. The witness says Abraham Nick. He's then asked, well, did you tell the detective that? No. Or actually, I don't remember telling the detective that. The question was, do you remember? Then the prosecutor goes on, she asks, did you hear a rumor? Yes, I did. Where did you hear it? I heard it around the neighborhood. Who else might have heard it? Other kids, adults. The prosecutor asks, do you remember when you heard it? No. Was it a long time ago? Yes. Now, approximately a year, just under a year, had elapsed from the surfacing of the accusations to the time of the trial. It is true that on redirect, the defense attorney then asks, did you hear about it prior to the arrest? That was my point. But I don't believe that diminishes the harm from the prosecutor's questioning and the due process violation. And I think you can really see that being heightened by Mr. Dykes' application to the Court to reopen before the case ever goes to the jury in order to recall this witness, to bring out that this was, in fact, the false rumor that the jury had heard was a false rumor, because if that were the case, then the district court would be correct that this is harmless error. But it is not at all clear from the testimony that that's the case. The specifics of the rumor, as questioned as in this questioning of Mr. Mick's testimony or Boyd-Abraham-Mick's testimony, are never brought out. The specifics of the rumor that Bobby Brew told were brought out in detail, and that was a rumor involving two boys supposedly involved with Mr. Dykes, a rumor that was conceded to be false. But it is not tied in the testimony or evident from Mick's testimony that it was the same rumor. And that is why Mr. Dykes realized it's critical to recall this witness, but that was not allowed. I think had that happened, it would have been a harmless error. Kennedy. Could you elaborate a little bit on what to do about Hubbard and, let's see, there was some other case, Ford v. Hubbard and Anthony v. Lambert? Yes. And if I can make just one final point, which is that the trial witnesses I keep asking you questions and you keep deciding to talk about something else first. And I forget my question by the time you talk about it. And I am not listening to your other point because I'm thinking about trying to keep my question in mind. Let me move on to Relation Back and I'll start with the Hubbard case. In that opinion, first of all, Judge Reinhart writes an opinion in which there's a long paragraph that deals specifically with Relation Back and is quoted extensively by the State. That paragraph is quoted in page 10 of the red brief, the State's brief. In Ford, Ford is, first of all, or Hubbard is not a Relation Back case per se. The petition at issue to which there could be Relation Back is dismissed. It's gone. It's really a case about reviving an old case and it's probably properly done through Rule 60b. Another panel of this Court in Griffey v. Lindsay, which I address in my reply brief, makes that specific point, that there was nothing to amend because the case was dismissed. You had to revive the case first. I think that is the first kind of critical distinction. A second critical point about it is that paragraph in the Court's opinion, the majority's opinion by Judge Reinhart, if it meant what the State says it means, would be undoing a hundred years of civil law about amendment of petitions, or at least 50 years. And it's very clear this arises because in 96 we have the AEDPA and the one-year statute of limitations is inserted into the Federal habeas. But when Congress enacted that limitations period, they maintained 2242, which states the petitions can be amended as per the civil rules, and that leads us to Rule 15c. Rule 15c states that a claim or defense clearly anticipating a different type of claim, not some explication of a particular claim, can be added if it arose out of the same conduct, transaction, or occurrence. In a habeas corpus case, we are talking about the underlying conviction as the conduct or occurrence. I think that point becomes critical, and I would urge this Court, I think in terms of the specific sub-question of 15c's application in habeas corpus cases, and I don't believe there's any basis for it to be a different rule than the civil rules because Congress said it's the civil rule. But as to that question, I think it's an open question in this circuit. The rule I'd urge the Court to adopt is the rule of Judge Easterbrook from the Seventh Degree Opinion, which I've also cited, which is if the petition is properly filed, then amendment back relates regardless of what the new claim is, because it is the same occurrence or transaction in the underlying criminal trial. Kennedy, could you come back then and clarify your response to Judge Kleinfeld's opinion as to what Judge Reinhardt and the panel meant when they didn't appear to adopt that? Why wouldn't your theory then have obliterated the whole paragraph there which says that Ford couldn't add new claims, he rose out of the same conviction, right? So what was Judge Reinhardt and the panel, what were they writing about? Beyond my contention that that's not a controlling opinion because of the distinctions I've made, I think there are two salient other points here. The first is, in Judge Reinhardt's opinion, he specifically parses out and sets in italics the portion of the civil rule that says set forth or attempted to be set forth in the original pleading. That becomes very important in the Ford v. Hubbard case because there, Ford has never, ever presented the claims to the State court. In fact, once the petition is dismissed, he then, after the statute is fully run, files post-conviction in State court. And there he tries to litigate new claims which are subsequently kept out of the new petition. Now, I don't think that's the case. Kennedy, I thought you were saying that you're reading Rule 15c's statement arise out of the conduct, transaction, or occurrence, that conduct is the conviction of which, about which he's appealing, and therefore, wouldn't any claim arising out of that conviction meet your test? Yes, I believe it should. Kennedy, I don't think that this passage of any of it, I mean, you're just basically saying this is wrong. Well, I think it is wrong. I don't think it's controlling both because it's a case about reviving rather than really amending, because it totally turns over this Court's opinion in Martel and all of the other cases in the civil context of what 15c amendment means. But even if that's not the case, what Judge Reinhardt wrote is completely harmonizable with what the district court wrote in our case. And the district court's treatment of that is at 1293 of the excerpt of record. The reason for that is, while I agree with what you just stated as my position about what the rule should be and how it should apply in Ford, what the point that Judge Reinhardt carries through in that opinion is he says, you know, these additional claims which were never previously presented to the State courts shouldn't be let in now. And then he does something interesting, and he remands for consideration of he talks about an equitable estoppel, or equitable tolling, but it's tantamount to cause and prejudice in the procedural default context. And that is, I think, one of the reasons also that the rule I propose does absolutely no harm to the State. I mean, the statute of limitations functions to extinguish meritorious claims. It provides a boon to the wrongdoer where the claims are meritorious. The State's protected by procedural default rules. I think the problem with what this suggests be done is that it puts the determination of cause and prejudice or procedural default sort of at the front end when you're looking at whether the amendment should be allowed. That is not the way civil practitioners, that I've spoken to, say the civil practice works, and it should be the same rule. I would point out something very interesting that Judge Easterbrook does in the Oesley opinion, a point that I think is real salient here, too, that if occurrence he, in that opinion, describes how if an occurrence or transaction is a very narrow part of a criminal trial, then even if you were within the year's period of time, you shouldn't be able to amend because it would be a separate habeas petition if it's a separate claim. And of course, those are precluded unless the circuit grants permission to do so. I would urge you to closely look at Judge Easterbrook's opinion, and it's certainly rare that an advocate from my position is going to be urging Judge Easterbrook, has the better of Judge Reinhart to let Judge Reinhart address something. Are we free to adopt it? Let's see, your language for distinguishing Ford v. Hubbard would be that's not a relation-backed case, even though they talk about Rule 15c. That's really a second petition case. That is a piece of it, yes, and this is only dicta in Ford v. Hubbard. But thank you for asking the question because it brings me back to another point. I do have to follow Ninth Circuit authority, even if we prefer Seventh Circuit authority. Well, I believe it's distinguishable as dicta for reasons I've noted. But let me also come back to the other point that I've said. You said we should prefer the Seventh Circuit opinion to the Ninth Circuit opinion, implying that they're different. They are different, yes. And they were consistent. And no, if I did, I've misstated that. Maybe I misunderstood you. I'll try to slow down. I think you said the district court here was consistent. Yes, and that was the point I planned to come back to. However, I would also urge that Ford v. Hubbard, as urged by the State to be applied here, and I don't believe as intended by Judge Reinhart, is completely inconsistent with this Circuit's precedent in Martel and the other cases that I've cited in my reply brief on amendment under the civil rules. In terms of harmonizing Ford v. Hubbard with what the district court did, the district court here, its rule, which as I noted laid out at 1293, states that you can amend, they will relate back if the issue was fairly presented on the State court record that's already in front of the court, as was the case here. In other words, if there is no procedural default of the claim, the State was on notice of it, indeed it's been litigated, it was fairly presented in the State court. That is a very distinct piece from the factual scenario in Ford v. Hubbard, where the claims were never presented to any court, as Judge Reinhart makes pains to note, until after the statute of limitations had run after the dismissal of the first petitions. Let me just ask you a question. What indication is there in the Ford case that the new claims raised in the amended petition were unexhausted? Judge Reinhart writes of each of those new claims. They were never presented to any court. Can you point to me an opinion where, if you can do it quickly, I will try to do it. I know that he states in here that they were never presented to any court. I couldn't find a specific line to that. It appears in your briefs that you thought there was. All right. Well, don't give us all your time. And we'll reread it. If you say it's here, I'll look for it. On page 1093, with respect to the claims that were raised for the first time in Ford's second habeas petition, well, no, I'm sorry, that's where you were, ma'am. I know it's in there that he states they've never been presented to any court prior to the running of statute of limitations. That's the same analysis does not apply to the claims that Ford asserted for the first time in his second petitions? Is that what you're referring to? Actually, where I was looking was not the correct place. I did not find the site. I'm reading from the opinion. Is that what you were looking for? I was looking at the opinion. And I know with certainty that it is there. I'm just not – I don't really want to consume the balance of my time addressing that. Then bring it up on rebuttal. Okay. I shall do that. I want to, I mean, hearken back to what I think is the core injustice. And Judge Kleinfeld, you noted it's wrong to have rumor be a part of a criminal trial. In particular here, it's all the worse because it's a rumor that is false, but the record does not link that to what the jury knew to be false. And it's devastating in a case where the credibility of the accusers is the issue for the jury to determine, where multiple witnesses from the community testified that two of those accusers were reputed as and known to be chronic liars and where there were other reasons, including psychiatric problems. How many kids say they had sex with this guy? Three. One of them has hallucinations, so he's pretty imbecile. Right? Yes. That's Matt McCabe. And the other two, what was the matter with their evidence? The Matt McCabe's younger cousin, who's the second accuser, McCabe, is the first, has also, according to six witnesses at trial, is sort of rampantly falsifying information or lying in the community. He's also, both he and the third accuser are known as attention seekers. And it's noteworthy, I think, that the third accuser comes out of sort of what is more or less a community witch hunt, that there's a press release issued by the community witch hunt, which is a group of people who have had contact, dozens, if not more, children who have had lots of contact come forward. And numerous of them are witnesses for Mr. Dykes at trial. So you've got various witnesses who say they've been at Dyke's apartment and there wasn't any sex going on. Including witnesses who are both interviewed and testify that they were there overnight sleeping in the same small room when these events would have occurred and they didn't notice or note anything. The jury heard that testimony. The jury did hear that testimony. But they also heard the rumor that out in the community, seemingly before any of these accusations arose, there was information that Mr. Dykes was engaged in sex with two of these boys. I think that that did. Why do you think the rumor would have had – I have no doubt that a judge should not let rumor in and a prosecutor should not try to get it in to prove the truth of the rumor, which is what it's for here. Why do you think, though, that it affected the outcome? And I think the standard is if you have grave doubt whether it impacted the jury's deliberations. Because they had – their job was look at the credibility. I mean, that's really what they had to do to decide the case. The credibility was impeached in numerous ways beyond the impeachment evidence. There was their demeanor, what the jury saw, and that, and the plausibility of it, which is undercut by the fact that it should have been observed by other people who were in the room. And there's this piece of, but wait, there's this rumor out there. And he heard that before these accusations surfaced. It must – you know, that can be your corroboration. And there isn't a lot of other corroboration there. There's no physical evidence. There's no admissions. So I believe there is grave doubt in the circumstances. And I think it's really Mr. Dyke's application to reopen, to bring back this witness, to cut that harm really highlights it and highlighted it for the trial court. And the Court erred in not doing so. That's not the specific issue, but it heightens or points you to the harm. I'd like to try to reserve my last tiny bit to address that passage. Thank you. May it please the Court. I would like to spend the first few minutes of my argument time today, to the extent it comports with the issues Your Honors care to hear about, discussing the merits of the due process claim and then proceed to discuss the relation back issue. With respect to the due process claim, it is important to understand the nature of Abraham Nick's testimony that's at issue. It is true – the defense called Abraham Nick as a witness and he testified that he had spent one night at Petitioner's apartment and had played games with Petitioner and with some of the other children whom Petitioner had befriended. On cross-examination, the prosecutor did elicit testimony that Abraham Nick had heard a rumor that Petitioner did sexual things with Matt and Sean. I couldn't believe that when I read it. I've got that testimony right here, and it just blew me away. Here's the prosecutor putting it in, and it looks to me as though what it's in for is to show that it's true, and it is exactly the core thing that the hearsay rule and the confrontation clause are designed to prevent. Instead of – instead of the man being tried on the basis of the testimony of the accusers that he can face, he's tried on the basis of everybody knows. It is well-known that. There are rumors. Everybody knows. I couldn't believe it. What was the prosecutor doing putting this in, and how can it possibly be anything other than error and we should just decide if it's pervasive? I – as Your Honor, I'm sure is aware, I did not attempt to argue in the red brief that the testimony was admissible. I did not attempt to argue that it was not evidentiary error for the Court to let that in. I think there's a very – Okay. Why doesn't this pervade the trial? It looked to me like – I haven't read the whole record, so I may misunderstand the trial, and I want you to educate me if I – if I did. But it looked to me like a trial that could go either way. Some boys say that this defendant had sex with them in the apartment. Other boys say they were right there in the apartment when it was supposedly going on. There wasn't any sex. One of the boys plainly has little force as a witness because he hallucinates. So it looked like a case that could go either way. All the defense needs is a reasonable doubt, and the rumor looked serious in that context. I agree that, of course, all the defense needs is a reasonable doubt, as the defense does in any case. But I believe the evidence of Petitioner's guilt in this case was strong. There are a few very important aspects about the testimony, the specific rumor testimony, to keep in mind in evaluating its significance. Wait. Make sure that you're focused on my question. My question is, why doesn't it so pervade the trial as to deny due process? Or put another way, why shouldn't we have a grave doubt about the conviction in light of the nature of the evidence and the nature of the error? First, Abraham Mick's testimony was merely cumulative of other testimony that came into the record without any objection from Petitioner. That's number one. Cumulative of what? Bobby Brew testified before Abraham Mick testified that he had spread a rumor that he saw two of the victims, Matthew McCabe and Sean Cranston, tied together naked at Petitioner's apartment. He also testified, Bobby Brew did, that he spread that rumor before the victims in this case disclosed the abuse they had been subjected to. So both of those facts were already in the record, that there was a rumor circulating and that the rumor was circulating before the allegations were made. Why does that help? It seems to me that the jury could easily interpret that to be further evidence that everybody knows that Dykes is a child molester. Because Petitioner did not object to it. And if Petitioner wishes to bring a due process claim. The prosecutor introduced it, right? Yes. And Petitioner did not object. The defense did not object. The defense theory was that these children were spreading rumors about Petitioner because they were mad at him and they were making up lies. So to a large extent, testimony that rumors were spreading around was completely consistent with Petitioner's defense theory in this case. It was only the detail that the rumor was spread before the victims went to the school counselors and to the police and disclosed that Petitioner claims makes this prejudicial. Because if Petitioner were correct and these victims had lied, one would expect rumors to be flying everywhere. And that is completely consistent with his theory of what happened. Along that line, with respect to the only significant Yes. If the charges are correct, if the defendant is guilty, then you would expect rumors to be flying everywhere, and that's exactly what happened. So the rumors are used to prove the truth of the charges. I'm sorry. Petitioner argued – I think we're crossing a bit here. Rumors here are strong corroboration for the charges in the jury's mind, it looks like. Petitioner tried to argue that rumors – I don't recall the exact nature of Petitioner's closing argument with respect to the rumors. But his – the defense theory was that these children were making up lies. Rumors that circulate after they have disclosed to counselors and to the police don't really tend to support the prosecution theory any more than the defense theory. If Petitioner's theory was these children were out to get him, one would expect them to circulate rumors as strongly as possible. They did it because they didn't like him. Can I get the chronology then? You're saying the defense theory was that kids were spreading lies about his sexual behavior. That's the general theory, correct? Yes. And that in the prosecution's case, Bobby Brew testified that, yes, rumors were going around about sexual misconduct. I'm sorry. I need to correct one thing. Bobby Brew was called as a defense witness. The prosecutor elicited that testimony on cross-examination. Right. So Brew – and so the prosecutor asked, and Brew testified without objection, that, yes, there were rumors going around and you're saying that that rumor that was going around predated the event that's at issue here. Predated the disclosures, yes. And Bobby said that. Okay. So then there was no objection to that. Correct. And that may well – was that the basis? Did it ever come out that that was the basis of Petitioner's claim for? No. There was never any elaboration regarding the nature of Petitioner's claim for. Okay. So then moving along chronologically, then this disputed question that comes up – I forget who's being asked. Was it Mick or any event where there is the objection? Did you ever hear a rumor that Petitioner was doing sexual things with Matt or Sean? Yes, I heard a rumor. This is Mick who's on the stand, right? Correct. Okay. Objection hearsay overruled. He doesn't put it in time, nor does he remember where he heard it. He heard it a long time ago is all he says in response to the prosecution. Okay. And the – I don't see that. I heard it from – it was around the neighborhood. Do you remember where you heard it from? No. Who else might have heard it? The kids in the neighborhood, maybe adults? I don't know. Okay. So is your argument that the jury would have assumed that that was simply reinforcing the previously unobjected to Breugh testimony? Yes. And that's clear from the prosecutor's questioning. She started out asking Abraham Mick whether he had heard a rumor from Bobby Breugh. He said no, and she said, well, didn't you ask to tell the detective that or something along those lines? And he didn't remember. So then she asked the more general question, did you hear a rumor? And he said yes, and he said he didn't remember who he heard it from. And as the district court found in this case, it's clear from the context when you read all that together that the jury would have inferred that that was the same rumor. I don't see it. It looks to me as though, first of all, Mick is denying that he picked this up from Breugh. He's saying he heard it around the neighborhood. Second, when I look at Breugh, there really isn't the way the prosecutor elicited the testimony. He really didn't give the defendant something to object to. He said the prosecutor stuck this in. Do you remember telling Abraham Mick that you saw Timmer and Matt do something unusual? Yes. Well, that's not hearsay. There's no hearsay objection to that. It's not asking about hearsay. And what was that? And then he says this disgusting stuff that he told Abraham Mick. It's not hearsay. It's not rumor. It's what I told Mick. And then the prosecutor and then Breugh volunteers that he made it up and that it was a lie. And that it was before the charges had occurred. And then the prosecutor confirms that he made it up. And then the prosecutor leaves it. So that's now dropped in there. Nothing objectionable. Nothing to object to. Where the rumor comes up is with Mick and with Abraham Mick, the prosecutor says, did you ever hear a rumor that Timmer was doing sexual things with Matt or Sean? And that's when the prosecutor brings out, yes, Mick heard a rumor and it was around the neighborhood, and no, he did not tell Detective Yost that Bobby Breugh told him that he saw Timmer and Matt do this disgusting business. So it looks to me as though what Mick is doing, with Breugh, there was nothing objectionable, nothing to object to. It was just a pebble tossed in the pond to be used later. Then with Mick, what the prosecutor has brought out here is that there's a rumor around the neighborhood, and it isn't just Breugh's lie to Mick, or even particularly Breugh's lie to Mick. It's something around the neighborhood. So I don't understand your argument. Well, it was around the neighborhood. Another child also testified, Joey Kranich, about the rumor. Well, that makes it worse for you, not better. Well, it's – You're trying to show me that it didn't – that this error did not pervade the trial, and now you're saying it did. There was another witness, too, testified to the rumor around the neighborhood. Well, I want to make sure that I am candid with the Court about the evidence that is in the record, and another child did testify about it. He testified that Bobby told the rumor to both him and to Abraham Mick. Who was that other child? Joey Kranich. Was there objection to that? There was not. And again, that helps explain why Abraham might have characterized this as being around the neighborhood. Joey's testimony was that he and Abraham and perhaps other children were also there when Bobby told them this story. Again, another point I need to make about this whole issue of the testimony. I firmly believe the only way this could be prejudicial is if the rumor spread before the children made these allegations, because after they made the allegations, everyone started talking about everything. That's cutting it pretty fine. Excuse me? That's cutting it pretty fine. It's the argument that Petitioner makes. Everybody in the neighborhood knows that Dykes is raping these children, but as long as everybody doesn't know until after they've seen it in the paper, the jury should assume they got it from the paper. And that's a permissible inference, but it strikes me that it's arguable. Well, it's the argument that Petitioner makes in his own brief on pages 4 and 5 and 38. He argues repeatedly that it was the timing of the rumor that prejudiced his client, not the mere existence of the rumor itself. So I would direct the Court to those arguments. Also, I would point out that not only did the testimony from Abraham Mick respecting the timing of the rumor come out only because of the specific question asked by Petitioner's own lawyer, but, in fact, it was Petitioner himself who insisted that his lawyer ask that question. At excerpt of record, page 978, Petitioner is as- That's after the harm had been done and he's trying to reduce the damage, isn't it? He's- The harm has not been done because at this point- The harm was done on page 812. He objects to this rumor coming in, the judge overrules him, and- That's correct. It's all plopped out there. But at page 978, Petitioner explains that he asked his lawyer to ask the specific question regarding the timing. He says, I asked him, meaning Petitioner asked his lawyer, to place a time period on that, whether it was previous to my being picked up or afterward. And given that Petitioner's argument is that the prejudice in this case resulted primarily from the timing of the rumor, that it was spread before he was arrested and before all these allegations became public around the neighborhood, the fact that he himself asked his lawyer to- directed his lawyer to ask that question deprives him of any ability to say that the State has deprived him of due process by eliciting this testimony. He did it himself. I have only five minutes left. And with Your Honor's indulgence, I'd like to move to the Relation Back issue, unless there are more questions. I have a question about that. I fundamentally don't understand how habeas relation back has gotten to be any different from ordinary Rule 15 relation back, where you just look to see if it's the same transaction, same conduct, transaction, or occurrence, I think is the buzzwords. And of course, it's all in the definition, the scope of the transaction or the conduct that one looks at. Well, the way you use it, I don't know if you practice other kinds of law, but in tort law, for example, the complaint may just allege negligence. And then the amended complaint may allege altogether different theories, strict liability, assault, all kinds of other stuff that's quite distinct from negligence. And it all relates back if it's the same physical occurrence. And so if, for example, somebody went into a store and there were a slip-and-fall and they originally alleged negligence and wanted to collect damages for their injuries, certainly any amended claim that related back, any amended complaint that added new claims or arguments regarding the specific theory of liability surrounding the slip-and-fall would relate back. However, the claimant couldn't in a later complaint allege that at the same time he was in the store, he made a purchase and there was some breach of contract or there was a warranty claim, some products liability claim associated with the purchase he had made in the store at the same time, even though if one were to use the word transaction or occurrence in its broadest possible sense, you could argue that, well, it all happened at the same time. And I think that's what's going on here, is in the habeas context, suppose there had been in the initial pro se petition a claim that, just a broad claim that the lawyer should have objected to, let's go with claim four that was there. Counsel failed to object to the introduction of prejudicing evidence. Certainly in an amended petition, that claim could be fleshed out. We could learn which specific evidence the petitioner would think the lawyer should have objected to in making that ineffective assistance of counsel claim. But here there is simply, as petitioner has conceded and as the district court found, no relationship between the due process claim regarding Abraham Mick's testimony and any of the claims that was alleged in the original petition. There was only one due process claim in the original petition. It related to the alleged alteration of trial transcripts. And there were three inadequate assistance claims. But of course, and those were not developed. They never put the State on notice with regard to any particular thing that might have been objectionable in the trial. And moreover, the one that claim four that Your Honor alluded to earlier says counsel should have objected, while counsel did object. To me, that wouldn't be binding, because that was a pro se petition. And a prisoner might frame it that, well, the hearsay objection wasn't really the right objection. So that's why I was extremely curious as to why it wasn't connected up with that. I think we'd have a closer argument if the pro se petition said something like my lawyer should have objected to the hearsay evidence that Abraham Mick. I don't even think he has to nail it down as quite that fine. I mean, we're asking a pro se petitioner to come up with the rules of evidence. And all he heard was that presumably objection hearsay overruled. So, you know, it's not beyond the realm to think that my attorney didn't really object. He threw in something that wasn't the right objection. So he didn't know what it should have been. And so had there been anything about that claim that tied it into Abraham Mick's testimony, that tied it into rumor testimony in general, I think we'd have a much more interesting issue to wrestle with respecting relation back. Cut it as fine as analyzing his claims. I'm thinking his trial is the slip and fall. And in his pro se petition, he comes up with these somewhat silly theories for why the trial is constitutionally defective. And then subsequently, his lawyer refines them, but it's the same case, same trial that he's claiming is constitutionally defective. Why isn't that like, why isn't the trial the slip and fall? Because that would undermine the purpose of a one-year statute of limitations and allow a- No, I'm not sure that it would. The purpose of a statute of limitations is so that the claim can, the issue can be put to rest, everything is final. If people have records, destruction policies, they can pursue them. And they know once this pro se petition is filed, that this case isn't final. It's not over. If I may have leave to briefly answer your question, I'm over time. If petitioners in habeas cases are permitted always to amend their petitions to add claims that have no relationship to those in their initial pro se petition beyond arising out of the same criminal convictions, the filing of the petition gives the state no notice of- Okay, but in this case, the state, and Judge Jones was very pointed about this. In this case, the state did have notice about this claim, did it not? Because he had made, hasn't he raised this claim before in state proceedings? At trial- It wasn't carried forward into the habeas, the original habeas petition. I have a footnote in my brief in which I point out that the claim is procedurally defaulted, but also acknowledge that we did not raise that argument in district court, and therefore I cannot properly raise it here. He made a hearsay objection. He did not object on due process grounds at trial. He, in the Oregon Court of Appeals, that means his claim is not preserved for review. He could- But it's not as if the issue, in other words, the hearsay objection, he didn't put the due process label on, is that what you're saying? Correct. But he did object to it as being improperly admitted. So all of the, this is not out of the realm of possible things that go on in a long trial. The state had some notice and was able to argue why, its theory as to why that was properly admitted. It was one of the many issues he had raised. You didn't have to address the issues that we've been pressing you on about why it didn't pervade the trial under the due process rubric. But in this case, you got to, the state was on notice that this was a contested issue in any event. That whether it violated the rule against hearsay. Yes. Let me just ask one more thing. There was no post-conviction case. I mean, counsel failed to comply with the scheduling order and the case was dismissed. So there was a reason this was not fleshed out. He never had state post-conviction relief that he could have used as a basis for the original Federal habeas petition. Is that correct? With respect to this due process claim, it could have been raised only on direct appeal under Oregon law. The due process claim is not one that could have been pursued in state post-conviction. I see. Thank you. Thank you, counsel. Thank you. Appreciate your candor. If I could just pick up where you left off. In Oregon court of appeals, the due process claim was presented, as in the Oregon Supreme Court on direct appeal. If it was ineffective assistance to not make the due process objection at trial, then that was forfeited because post-conviction was not pursued, as you noted. With regard to the Ford v. Hubbard stuff, it takes a fairly close reading. In the procedural history that he – that Judge Reinhart lays out of the Weed and Ligurso cases, there's two parallel cases, the Federal statute ran on April 24th, a year after the AADPA of 97. The petition was filed five days earlier, the initial petition, which is dismissed. It's an – it ends up being dismissed on August 5th of 97. The two state habeas cases that present those other issues for the very first time are first filed in the state trial courts on September 29th of 97 and October 24th of 97. That is why those claims were never presented until after the statute had run under the argument that's asserted there. With regard to counsel's point about Petitioner arguing the timing of the rumor coming in being critical, Mr. Dykes notes in his argument to the state to reopen to the court, to reopen, to let the witness come back to show this wasn't the rumor they heard about, they knew was false. He highlights the timing. He says, you know, Judge, if I'm saying these kids are making up claims against me because, you know, they've heard about the allegations, you know, that's important. The jury's got to know that. The prosecutor's trying to use it to show I'm guilty. And so we do note that point, but we also note, and I highlight this in my reply brief, that that is not the only reason. I suggest to you that, indeed, there is grave doubt whether this influenced the jury's deliberations, and I suggest that the district court should be reversed, although it's correct on the relation back issue. Ginsburg-Miller Did you have time to find the answer to my question? Well, I can't, yes. And there's two sections of the opinion that need to be read, in addition to footnote 9 of the opinion and the later portion of, I believe it's 4d, where he addresses relation back. The facts that I recited to you are from that opinion, those dates that show both the statute had run, the initial Federal petition had been dismissed, prior to any filing of the State post-conviction, they were called State habeas in California, proceedings in which the second class of claims are presented for the very first time. Because in the Ford opinion, there's really kind of three classes of claims. Those that are exhausted with the initial petition, those that were in the petition but not exhausted, which made it mixed, which led to the error by the district court in not properly advising Mr. Ford. And then those that are stuck with it. I'll take another look at the case. Say it's there, I'll look for it. Thank you, counsel. Thank you. Dykes v. Lampert is submitted. Peroni v. Palmatier is submitted. We'll hear Creative Computing v. getloaded.com. Counsel, please proceed when ready.
judges: Dw Nelson, Kleinfeld, Fisher